**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA
LINCOLN DIVISION**

| | | |
|---|---|---|
| **STEPHANIE IDEUS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CASE NO. 4:16-CV-03086-JMG-CRZ** |
| **v.** | ) | |
| | ) | |
| **TEVA PHARMACEUTICALS USA, INC.,** | ) | |
| *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

**TEVA PHARMACEUTICALS USA, INC. AND TEVA WOMEN'S HEALTH, INC.'S
MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendants Teva Pharmaceuticals USA, Inc. and Teva Women's Health, Inc., (collectively "Teva") move the Court to enter an Order granting summary judgment in their favor.

This Motion is supported by the accompanying Memorandum, the concurrently filed Index of Evidence, Declarations of Thomas E. Mehs; Daniel Davis, M.D., MPH; Sonja R. Kinney, M.D.; and Frederick M. Erny (including the Exhibits attached thereto), and the October 26, 2017 Order in *Estrada v. Teva,* Case No. 14-CV-1875-AJB-AGS, (S.D. Cal.), (submitted as a provisionally sealed document with an accompanying Motion to Seal, pursuant to Local Rule 7.5).

Respectfully submitted,

/s/ *Frederick M. Erny*
Jeffrey F. Peck, admitted *pro hac vice*
Frederick M. Erny, admitted *pro hac vice*
Mary Lynn Tate, admitted *pro hac vice*
ULMER & BERNE LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Tel:  (513) 698-5000

Fax:  (513) 698-5001
jpeck@ulmer.com
ferny@ulmer.com
mtate@ulmer.com

Patrick Turner
STINSON LEONARD STREET LLP
1299 Farnam Street, Suite 1500
Omaha, NE 68102-1818
Tel: (402) 930-1740
Fax: (402) 829-8733
patrick.turner@stinson.com

***Attorneys for Defendants Teva Pharmaceuticals
USA, Inc. and Teva Women's, Inc.***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 13, 2018, a copy of the foregoing document was filed electronically.   Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.   Parties may access this filing through the Court's system.

<u>/s/ *Frederick M. Erny*             </u>

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**
**LINCOLN DIVISION**

| | | |
|---|---|---|
| **STEPHANIE IDEUS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CASE NO. 4:16-CV-03086-JMG-CRZ** |
| **v.** | ) | |
| | ) | |
| **TEVA PHARMACEUTICALS USA, INC.,** | ) | |
| *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM IN SUPPORT OF TEVA PHARMACEUTICALS USA, INC. AND**
**TEVA WOMEN'S HEALTH, INC.'S MOTION FOR SUMMARY JUDGMENT**

## I.   INTRODUCTION

Teva Pharmaceuticals USA, Inc. and Teva Women's Health, Inc., (collectively "Teva")

are entitled to summary judgment.   Plaintiff Stephanie Ideus alleges she was injured by

ParaGard® T380A Intrauterine Copper Contraceptive ("ParaGard"), a prescription drug product

she had placed in her uterus to prevent pregnancy and removed four years later.   Plaintiff's single

remaining cause of action is a failure-to-warn claim[1] in which she alleges Teva failed to

adequately warn about the risk of embedment and breakage in the package insert, or labeling, for

ParaGard.   While plaintiff admits the Paragard labeling warned of risks of embedment, breakage,

and the possible need for surgical removal (Second Amended Complaint ("SAC"), Doc. 57, ¶¶

20-23), she complains the ParaGard labeling should have included additional warning language

about those risks.

---

[1] Plaintiff voluntarily dismissed her claims for manufacturing defect, design defect, and fraud.   (*See* Memorandum and Order, Doc. 66, fn 1.)   Both plaintiff and the Court have since recognized that plaintiff's sole remaining cause of action is a failure-to-warn claim.   (*See* Plaintiff's Brief in Support of Her Renewed Motion to Compel, Doc. 69, p. 3 ("Thus, Plaintiff's only remaining claim is for failure to warn."); Memorandum and Order, Doc. 71, p. 1 ("At present, Plaintiff's sole remaining claim alleges Defendants failed to warn of the possible breakage and embedment risks associated with the removal of Paragard.").

Plaintiff's claim is preempted by federal law.  Following the trilogy of United States Supreme Court cases addressing federal preemption of state-law claims involving pharmaceutical products, it is clear that pharmaceutical manufacturers cannot change their product label without the federal government's special assistance and permission unless "newly acquired information" (as that term is defined in the Code of Federal Regulations) scientifically supports a change to the product label.  Plaintiff can point to no evidence demonstrating that Teva should have or could have independently revised ParaGard's labeling after September 1, 2005 (the date the ParaGard labeling was approved following extensive review by the federal Food and Drug Administration ("FDA")) and before January 11, 2010 (the date Ms. Ideus's ParaGard was placed).

Plaintiff's failure-to-warn claim also fails on state law grounds.  First, her claim fails as a matter of state law because the ParaGard label warns of the precise event Ms. Ideus experienced, and was adequate as a matter of law.  Further, the risks of embedment and breakage were well-known in the prescribing community at the time plaintiff's ParaGard was placed, and Teva had no duty to warn of risks that were generally known.  In addition, plaintiff's claim fails because she cannot carry her burden of proof on proximate cause.  Plaintiff has no evidence that any different embedment and breakage warning would have caused plaintiff's healthcare provider not to prescribe and place plaintiff's ParaGard.

For all of these reasons, individually and collectively, Teva is entitled to summary judgment.  There is no genuine issue of material fact, and the Court should enter judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

2

## II.     STATEMENT OF MATERIAL FACTS

Pursuant to Nebraska Civil Rule 56.1(a), Teva submits the following separate statement of material facts about which Teva contends there is no genuine issue to be tried and that entitles Teva to judgment as a matter of law.

1.      Plaintiff Stephanie Ideus is a Nebraska citizen who resides in Martell, Nebraska. (SAC, Doc. 57, ¶ 1.)

2.      Defendant Teva Pharmaceuticals USA, Inc. is incorporated in Delaware and has its principal place of business in Pennsylvania.  (Defendant Teva Pharmaceuticals USA, Inc.'s Answer and Defenses to Plaintiff's Amended Complaint, Doc. 23, ¶ 2.)

3.      Defendant Teva Women's Health, Inc. was incorporated in Delaware with its principal place of business in Ohio.  (Defendant Teva Women's Health, Inc.'s Answer and Defenses to Plaintiff's Amended Complaint, Doc. 24, ¶ 2.)

4.      The alleged amount in controversy exceeds $75,000 exclusive of costs and interest.  (SAC, Doc. 57, ¶ 4.)

5.      Plaintiff alleges a substantial part of the events or omissions giving rise to her purported claims occurred in this District.  (*Id.*, ¶ 5.)

6.      Plaintiff's ParaGard was placed on January 11, 2010 in Nebraska.  (*Id.*, ¶ 10.)

7.      Plaintiff's written discovery responses do not identify the healthcare provider who prescribed and placed Ms. Ideus's ParaGard.  (Answer to Interrogatory No. 2, attached to the concurrently filed Declaration of Frederick M. Erny ("Erny Dec.") as Exhibit A.)

8.      Plaintiff does not remember the name of the healthcare provider who prescribed and placed her ParaGard.   (Deposition of Stephanie Ideus, excerpts attached to Erny Dec. as Exhibit B, p. 65, lines 12-14.)

9.      Teva's counsel has requested plaintiff to supplement her discovery responses regarding the identity of the healthcare provider who placed her ParaGard.  (June 12, 2017 Letter, attached to Erny Dec. as Exhibit C.)

10.     Plaintiff has not supplemented her responses.  (Erny Dec., ¶ 4.)

11.     Plaintiff's ParaGard was removed in July 2014 in Nebraska.  (SAC, Doc. 56, ¶11.)

12.     Upon removal, an arm of the ParaGard remained embedded in the myometrium of her uterine wall.  (*Id.*, ¶¶11-13.)

13.     After an ultrasound was performed, the embedded arm was removed surgically in February 2015.  (*Id.*, ¶13.)

14.     ParaGard is a copper "T" shaped intrauterine device ("IUD") placed in the uterus to prevent pregnancy.  (Concurrently filed Declaration of Thomas E. Mehs ("Mehs Dec."), ¶ 2.)

15.     The new drug application ("NDA") for ParaGard was filed with the FDA by The Population Council on August 25, 1983.  (*Id.*)

16.     FDA approved the ParaGard NDA on November 15, 1984. (*Id.*)

17.     Teva Women's Health, Inc. became the holder of the ParaGard NDA on November 9, 2005.  (*Id.*)

18.     On September 1, 2005, FDA approved revised labeling for ParaGard. (*Id.,* ¶ 4.)

19.     The revised labeling was the culmination of an approximately ten-month process during which FDA and the NDA holder at the time, FEI Women's Health LLC ("FEI"), exchanged proposed labeling, revised labeling, and comments.  (*Id.*)

20.     The process started with FEI's submission of Supplemental NDA ("sNDA") 60 on October 19, 2004.  (*Id.*)

21.     In sNDA 60, FEI requested an extension of the use-life of ParaGard from ten years to twelve years.  (*Id.*)

22.      In addition, FEI submitted drafts of extensively revised physician and patient labeling.  (*Id.*)

23.     FEI explained to FDA that the current approved labeling had not been significantly modified in over 16 years and the proposed revisions were intended to appropriately update the label with the most current information on the product and make the labeling more consistent with applicable current industry standards and labeling formats.  (*Id.*)

24.     The October 19, 2004, submission included detailed side-by-side comparisons of the then-current approved labeling and the proposed physician and patient labeling. (*Id., *¶5.)

25.     All proposed changes, including formatting changes, were supported by a Change Rationale statement in which FEI explained the reason(s) for each proposed change.  (*Id.*)

26.     The side-by-side comparison also was supported by a Change Rationale Bibliography.  (*Id.*)

27.     Between October 19, 2004, and September 1, 2005, FEI submitted ten amendments to sNDA 60 in response to FDA's requests for information.  (*Id.*, ¶6.)

28.     On February 10, 2005, in response to an FDA request for an assessment of post-marketing reports information, including difficult removals, FEI  submitted summaries and analyses of serious adverse events, pregnancies, and difficult removals broken down by year and sorted by other criteria covering the period between January 1, 1995 and September 30, 2004. (*Id.*, ¶7.)

29.     The submission included copies of information from FEI's Adverse Event Reporting Database and narratives of Serious Adverse Events.  (*Id.*)

30.     The submission also included data about reports of embedded ParaGard arms that broke during removal.  (*Id.*)

31.     FDA subsequently sent FEI revisions dated August 2, 2005 and August 3, 2005, respectively to the physician and patient labeling proposed by FEI.  (*Id.*, ¶8.)

32.     FDA and FEI discussed FDA's revisions during an August 8, 2005, conference call.  (*Id.*)

33.     On August 19, 2005, FEI submitted to FDA the ninth amendment to sNDA 60 in which FEI proposed changes to FDA's revisions to the physician and patient labeling and provided commentary explaining the reasons for FEI's proposed changes.  (*Id.*)

34.     FDA responded on August 31, 2005 with additional revisions, and FEI submitted proposed changes to FDA's revisions, again with explanatory comments for the proposed changes, on September 1, 2005.  (*Id.,* ¶9.)

35.     FDA decided which proposed changes it would accept and advised FEI on September 1, 2005.  (*Id.,* ¶10.)

36.     FEI agreed to abide by FDA's decision and that same day, FDA issued a letter approving the updated physician and patient labeling.  (*Id.*)

37.     FDA instructed FEI to submit final printed labeling ("FPL") identical to the approved labeling.  (*Id.*)

38.     Among the changes to the physician and patient labeling were changes to warnings and instruction text about the risk of embedment, difficulties in removal resulting from embedment, the risk of breakage, and the possible need for surgery for embedment or embedment and breakage.  (*Id.*, ¶11.)

39.     When sNDA 60 was submitted, information about embedment and breakage in

the FDA-approved physician labeling was in the Warnings section of the labeling.  (*Id.*)

40.     FEI retained a warning about embedment in the Warnings section of its proposed label, but it proposed that certain information about embedment and breakage be moved from the Warnings section to the Precautions section and placed in a separate subsection titled "Removal and Embedment."  (*Id.*)

41.     FEI provided FDA with its explanation for the proposed change.  (*Id.*)

42.     FDA decided instead to create a separate subsection in the Instructions for Use section of the physician labeling titled "How to Remove ParaGard," in which it placed a modified version of the text FEI proposed for the "Removal and Embedment" subsection.  (*Id.*)

43.     FDA's "How to Remove ParaGard" subsection and text were included in the physician labeling FDA approved on September 1, 2005.  (*Id.*)

44.     The ParaGard labeling that was in effect on January 11, 2010 was the labeling approved by FDA on September 1, 2005.[2]  (*Id.*, ¶12.)

45.     ParaGard's labeling includes a package insert with prescribing information for the physician titled "PRESCRIBING INFORMATION," including detailed diagrams on the proper placement of the IUD and a patient package insert titled "INFORMATION FOR PATIENTS" (*Id.*, ¶ 3; ParaGard package insert, attached to Mehs Dec. as Exhibit A, pp. 3-20).

46.     In addition to a product description, the Prescribing Information describes the mode of action for contraception, indications and usage, instructions for use, and information for patients.  (ParaGard package insert, Mehs Dec., Exhibit A, pp. 3-4; 7; and 10-14.)

47.     The Prescribing Information also includes warnings, contraindications,

---

[2]In 2006, the labeling signature block was changed from FEI Products LLC to Duramed Pharmaceuticals, Inc. ("Duramed") after Duramed purchased the NDA, and minor changes were made to the revision date, copyright statement and part number between September 1, 2005 and January 2010.  Those revisions did not change any of the labeling's content.  (Mehs Dec., ¶ 12.)

precautions, and potential adverse reactions for ParaGard.  (*Id.,* pp. 5-9.)

48.  Under "Warnings," the prescribing information lists "embedment" and "perforation":

> 5.  **Embedment**
> Partial penetration or embedment of ParaGard in the myometrium can make removal difficult.  In some cases, surgical removal may be necessary.
> 6.  **Perforation**
> Partial or total perforation of the uterine wall or cervix may occur rarely during placement, although it may not be detected until later.  Spontaneous migration has also been reported.  If perforation does occur, remove ParaGard promptly, since the copper can lead to intraperitoneal adhesions.  Intestinal penetration, intestinal obstruction, and/or damage to adjacent organs may result if an IUD is left in the peritoneal cavity.  Pre-operative imaging followed by laparoscopy or laparotomy is often required to remove an IUD from the peritoneal cavity.

(*Id.,* p. 7.)

49.  Similarly, "Perforation" and "Embedment" are disclosed among the "most serious adverse events associated with intrauterine contraception" under the Adverse Reactions section of the package insert.  (*Id.,* p. 9.)

50.  Under "Continuing Care," the physician is advised that "ParaGard can break" and that it can "perforate the uterus."  (*Id.,* p. 13.)

51.  In the section of the package insert titled "How to Remove ParaGard," the physician again is advised of the risks of embedment and/or breakage, and the possibility that surgical removal may be necessary:

> Embedment or breakage of ParaGard in the myometrium can make removal difficult.  Analgesia, paracervical anesthesia, and cervical dilation may assist in removing an embedded ParaGard.  An alligator forceps or other grasping instrument may be helpful.  Hysteroscopy may also be helpful.

(*Id.,* p. 14.)

52.  Finally, under "Precautions," in a section titled "Information for Patients," the

prescribing physician is advised as follows:

> Before inserting ParaGard discuss the Patient Package Insert with the patient, give her time to read the information.  Discuss any questions she may have concerning ParaGard as well as other methods of contraception.  Instruct her to promptly report symptoms of infection, pregnancy, or missing strings.

(*Id.*, p. 7.)

53.     In turn, the "Information for Patients" advises under a section titled "What side effects can I expect with ParaGard," that there can be "[d]ifficult removals" and "[o]ccasionally ParaGard may be hard to remove because it is stuck in the uterus.  Surgery may sometimes be needed to remove ParaGard."  (*Id.*, p. 19.)

54.     It also advises:

> Perforation:  Rarely, ParaGard goes through the wall of the uterus, especially during placement.  This is called perforation.  If ParaGard perforates the uterus, it should be removed.  Surgery may be needed.  Perforation can cause infection, scarring, or damage to other organs.  If ParaGard perforates the uterus, you are not protected from pregnancy.

(*Id.*)

55.     Plaintiff's initial deadline to disclose expert witnesses was April 3, 2017.  (Final Progression Order, Doc. 26.)

56.     Plaintiff's expert disclosure deadline was subsequently extended to July 3, 2017. (Order Granting Motion for Continuance and to Modify the Final Progression Order, Doc. 35.)

57.     Plaintiff failed to disclose any experts on or before July 3, 2017.  (Erny Dec. at ¶ 5.)

58.     The Court held a conference on July 11, 2017, during which plaintiff obtained an additional extension of time, through July 17, 2017, to disclose her experts.  (Order, Doc. 46.)

59.     Plaintiff failed to disclose any experts on or before July 17, 2017 (Erny Dec. at ¶ 5.)

60.     Teva timely disclosed experts Daniel Davis, M.D., MPH and Sonja R. Kinney, M.D.  (*Id.,* ¶ 6.)

## III.    LAW AND ARGUMENT

### A.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Philip v. Ford Motor Co*., 328 F.3d 1020, 1023 (8th Cir. 2003).  The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (*quoting* Fed. R. Civ. P. 56).  The proponent need not, however, negate the opponent's claims or defenses.  *Id.,* 324–25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting* Fed. R. Civ. P. 56).  A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.,* 586.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).  "If the evidence is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id.,* 249–50 (citations omitted).

Plaintiff has the burden of proving all elements of her failure-to-warn claim.  *See e.g., Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998). She must prove that the

ParaGard warnings were inadequate, that Teva had a duty to include the additional warning language she asserts in the ParaGard labeling, that Teva could have included that additional warning language, and that the absence of that additional warning language was the proximate cause of her injury.  *Freeman v. Hoffman-La Roche, Inc*., 618 N.W.2d 827, 841 (Neb. 2000). Speculation and conjecture are not sufficient to establish plaintiff's right to recovery.  The burden of proving a cause of action is not sustained by evidence from which a jury can arrive at its conclusion only by guess, speculation, conjecture, or choice of possibilities; there must be something more which would lead a reasoning mind to one conclusion rather than to another. *Fitzpatrick v. Louisville Ladder Corp.,* No. 8:99CV29, 2001 WL 1568389, *4 (D. Neb. 2001).

### B.   PLAINTIFF'S CLAIM IS PREEMPTED

Plaintiff's failure-to-warn claim fails because it is preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA") which governs pharmaceutical products.

### 1.   Federal Regulation of Pharmaceutical Products

#### a.   New Drug Approval Process

Prescription drugs are regulated under the FDCA, which is implemented and enforced by FDA.  *See* 21 U.S.C. §§301 *et seq*.; *id*., §§371, 393.  A drug may not be marketed in interstate commerce unless an application pursuant to 21 U.S.C. §355 is "effective"; *i.e.*, has been approved by FDA.  *See* 21 U.S.C. §355(a).  Section 355(b) applies to new drugs, like ParaGard, and requires submission of an NDA.  In reviewing an NDA, FDA physicians, chemists, statisticians, microbiologists, pharmacologists, and other experts scrutinize all aspects of the drug "from the design of clinical trials to the severity of side effects to the conditions under which the drug is manufactured."  *See* FDA's Drug Review Process:  Ensuring Drugs Are Safe and

11

Effective.[3]  FDA also may consult the sponsor and independent scientific experts.  *See* 21 U.S.C. §355(n).  NDA applicants must demonstrate the new drug is safe and effective for the proposed use before approval is granted.  *See* 21 U.S.C. §355(b)(1)(A).  Determinations of safety and efficacy are inextricably intertwined with the drug's use under the conditions set forth in the proposed labeling, which "serves as the standard under which FDA determines whether a product is safe and effective."  New Drug and Antibiotic Regulations – Final Rule, 50 Fed. Reg. 7470 (Feb. 22, 1985); 21 U.S.C. §355(b)(1)(F).

### b.    Labeling Requirements for New Drugs

"Labeling" includes "all labels and other written, printed, or graphic matters (1) upon any article or any of its containers or wrappers, or (2) accompanying such article."  21 U.S.C. §321(m).  "Label" is defined as "a display of written, printed, or graphic matter upon the immediate container of any article...." 21 U.S.C. §321(k); *see also* 21 C.F.R. §1.3.  FDA's regulations govern the content and format of drug labeling.  *See* 21 C.F.R. §§201.56 (general requirements), 201.57 (specific requirements).  The title and content of each section required to appear in drug labeling is specified in FDA's regulations.

### c.    The Post-Approval Process and Labeling Changes

No provision in the FDCA permits a manufacturer to change an approved drug's labeling without prior FDA approval.  *See* 21 U.S.C. §301 et seq.  The FDCA prohibits introduction into interstate commerce of any drug not approved under §355.  21 U.S.C. §355(a).  Any unapproved label change renders the drug a new, unapproved drug under the FDCA subject to the misbranding provisions.  *See id.*  Accordingly, under the FDCA, any change to an approved application must be approved by FDA prior to its implementation.

---

[3] Available at https://www.fda.gov/Drugs/ResourcesForYou/Consumers/ucm289601.htm.

Despite that requirement, FDA issued a notice advising industry that it would exercise its discretion and not take enforcement action if NDA holders instituted labeling changes before approval:  (i) to add or strengthen a contraindication, warning, precaution, or adverse reaction; (ii) to add or strengthen a statement about drug abuse, dependence, or overdosage; (iii) to add or strengthen an instruction about dosage and administration that is intended to increase the safe use of the drug product; or (iv) to delete unsupported indications for use or claims of effectiveness. *See* 21 C.F.R. §314.70(c); Supplemental New-Drug Applications, 30 Fed. Reg. 993, 993-94 (Jan. 30, 1965).  Those changes are made using FDA's "changes being effected" ("CBE") procedure and must be based on "newly acquired information" and "sufficient evidence of a causal association with the drug." *See* 21 C.F.R. §314.70(c)(6)(iii)(A); Supplemental Applications Proposing Labeling Changes for Approved Drugs, Biologics, and Medical Devices – Proposed Rule, 73 Fed. Reg. 2848, 2849 (Jan. 16. 2008).  CBE supplements must include the "newly acquired information" supporting the change and must be submitted to FDA for ultimate approval. *See* 21 C.F.R. §314.70(c)(7).  FDA can accept, modify, or reject a CBE supplement. *Id*.  Outside the limited enumerated circumstances for which a CBE may be submitted, all other changes must be implemented through a prior approval supplement ("PAS").

## 2. The Supremacy Clause, *Wyeth v. Levine*, *PLIVA, Inc. v. Mensing,* and *Mutual Pharm. Co., Inc. v. Bartlett*

The United States Constitution provides that the laws of the United States "shall be the supreme Law of the Land; … any Thing in the Constitution or Laws of any state to the Contrary notwithstanding."  U.S. Const. art. VI, cl. 2.  It has been well-settled since *M'Culloch v. Maryland*, 17 U.S. (4 Wheat) 316 (1819), that state law that conflicts with federal law is "without effect."  *See Maryland v. Louisiana*, 451 U.S. 725, 746 (1981).

13

In recent years, the United States Supreme Court addressed preemption in lawsuits aimed at pharmaceutical products on three occasions.  The first, *Wyeth v. Levine*, 555 U.S. 555 (2009), involved preemption of state-law claims involving pharmaceutical products approved through an NDA.  The Court, pointing to FDA's CBE process, held it was not impossible for Wyeth to satisfy both its state law duty to provide adequate warnings and its duties under federal law.  It did so, however, only because information existed that would have supported the submission of a CBE; *i.e.*, newly acquired information existed that warranted a change to one or more of the label sections specified in 21 C.F.R. §314.70(c)(6).  The Court acknowledged, however, that ultimately FDA must approve the change and FDA retains authority to reject the change.  *Id.*

Two years later, the Supreme Court again addressed preemption of claims against pharmaceutical manufacturers in *PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011).  In that case, the Court addressed claims involving generic drugs approved under an abbreviated new drug application ("ANDA").  While the Court in *Mensing* acknowledged that the federal requirements applicable to NDA drugs differ from those applicable to ANDA drugs, the Court was clear that the "question for 'impossibility' preemption is whether the private party could *independently* do under federal law what state law requires of it."  *Id.,* 620 (emphasis added) (*citing Levine*, 555 U.S. at 573).  If not, the state-law is preempted.

Two years after *Mensing*, the Supreme Court decided *Mutual Pharm. Co., Inc. v. Bartlett*, 570 U.S. 472 (2013), in which it reiterated its holding in *Mensing* and also held that state-law design defect claims aimed at pharmaceutical products are preempted.  Like *Mensing*, *Bartlett* involved a generic drug, but the holdings in both cases apply equally to drugs approved under an ANDA or an NDA.  Following *Levine*, *Mensing*, and *Bartlett*, it is clear that "when a party cannot satisfy its state duties without the Federal Government's special permission and

assistance, which is dependent on the exercise of judgment by a federal agency, that party cannot independently satisfy those state duties for pre-emption purposes." *Mensing*, 465 U.S. at 623-24.

The United States Court of Appeals for the First Circuit applied the Supreme Court's preemption decisions in *In re: Celexa and Lexapro Marketing and Sales Practices Litigation*, 779 F.3d 34 (1st Cir. 2015), a case involving NDA pharmaceuticals. After first determining that the federal preemption issue should be decided before any state-law grounds because "unpacking how the federal law interacts with state law is key," the First Circuit acknowledged that a state-law claim is preempted where the company cannot act independently under federal law to do what state law requires. *Id.*, at 40 (*citing Mensing*, 564 U.S. at 623-24; *Bartlett*, 133 S. Ct. 2466). The court recognized that an NDA holder can use FDA's CBE supplement process to change product labeling only where "newly acquired information" becomes available supporting certain changes to certain sections of product labeling. *Celexa*, 779 F.3d at 37; *see also* 21 C.F.R. §314.70(c)(6). As a result, the court concluded that a plaintiff is required to present facts in the first instance of what "newly acquired information" warrants the label change the plaintiff advocates. The court ruled that the plaintiffs did not overcome the preemptive effect of federal law because the plaintiffs did not allege any "newly acquired information" existed that would have supported an independent label change the company could have made. *Id.,* 42-43.

### 3. Plaintiff Has No Admissible Evidence that "Newly Acquired Information" Would Warrant or Support a Label Change or Use of a CBE

Plaintiff has no admissible evidence that any information existed to support a label change to ParaGard's package insert or use of a CBE. She cannot carry her burden of proof, and her claim fails because it is preempted.

15

Label changes using a CBE supplement are limited to those based on "newly acquired information" that supports a change to add or strengthen a contraindication, warning, precaution, adverse reaction; a statement about drug abuse, dependence, or overdosage; an instruction about dosage and administration that is intended to increase the safe use of the drug product; or that would delete false, misleading, or unsupported indications for use or claims for effectiveness. *See* 21 C.F.R. §314.70(c)(6)(iii). "Newly acquired information" is defined in the regulations as "data, analyses, or other information **not previously submitted to the Agency**, which may include (but is not limited to) data derived from new clinical studies, reports of adverse events, or new analyses of previously submitted data (*e.g.*, meta-analyses) if the studies, events or analyses reveal risks of a different type or greater severity or frequency than previously included in submissions to FDA. 21 C.F.R. §314.3(b)(emphasis added).

In an effort to avoid dismissal on preemption grounds at the pleading stage, plaintiff alleged "24 reports **submitted to the FDA** regarding incidents of 'breakage' with defendants' contraceptive device" constituted "newly acquired evidence." (Memorandum and Order, Doc. 66, p. 2 (emphasis added).) "It is those reports, the plaintiff alleges, that made it 'possible' for the defendants to modify the labeling 'without violating federal drug regulations.'" (*Id.,* pp. 2-3.) However – as the Court acknowledged – those reports have been **submitted to FDA prior to placement of plaintiff's ParaGard**. Therefore, by definition, they are not "newly acquired information." 21 C.F.R. §314.3(b). Plaintiff has no evidence to support her assertions that a CBE supplement was required.

A recent amicus curiae brief filed by the United States in September of 2018 in *Merck Sharp & Dohme Corp. v. Albrecht,* U.S. Supreme Court Case No. 17-290, further explains the meaning of "newly acquired information" in the context of the CBE process.

> "Information—including "new analyses of previously submitted data" – will qualify as "[n]ewly acquired information" only if it "reveal[s] risks of a different type or greater severity or frequency than previously included in submissions to FDA." 21 C.F.R. 314.3(b). Accordingly, **nominally "new" information concerning risks of a materially similar type, severity, and frequency as those revealed in information previously evaluated by FDA is cumulative and not "newly acquired information"** that could justify a CBE supplement. If for instance, FDA previously determined that that evidence of X was insufficient to warrant a warning about risk Y, the existence of additional but similar information about X would be insufficient to justify a warning."

*Id.,* fn. 11 (emphasis added) (A copy of the Amicus Brief is attached to the Erny Dec. as Exhibit D).

As detailed above, the ParaGard labeling in effect at the time of Ms. Ideus's placement was the culmination of an approximately ten-month process during which FDA and the then-NDA holder, FEI, exchanged proposed labeling, revised labeling, and comments. (Mehs Dec., ¶4.) Between October 19, 2004, and September 1, 2005, FEI submitted ten amendments in response to FDA's requests for information. (*Id.*, ¶ 6) One of those requests for information specifically requested an assessment of post-marketing reports, including information about difficult ParaGard removals. (*Id.,* ¶7.) In response, FDA was provided summaries and analyses of serious adverse events, pregnancies, and difficult removals spanning a nearly 10-year period. (*Id.*) That submission contained adverse event information, including data about reports of embedded ParaGard arms that broke during removal. (*Id.*)

Following submission of that adverse event data, additional draft labeling was exchanged, reviewed, and revised by FDA and FEI. (*Id.,* ¶¶ 8-9.) Eventually, FDA approved the September 1, 2005 labeling that was in effect at the time of Ms. Ideus's ParaGard placement. (*Id.,* ¶10.) Among the changes to the physician and patient labeling were changes to warnings and instruction text about the risk of embedment, difficulties in removal resulting from embedment, the risk of breakage, and the possible need for surgery for embedment or

17

embedment and breakage.  (*Id.,* ¶11.)  When FEI's amendment was submitted, information about embedment and breakage in the FDA-approved physician labeling was in the Warnings section of the labeling.  (*Id.*)  FEI retained a warning about embedment in the Warnings section of its proposed label, but it proposed that certain information about embedment and breakage be moved from the Warnings section to the Precautions section and placed in a separate subsection titled "Removal and Embedment."  (*Id.*)  FEI provided FDA with its explanation for the proposed change.  (*Id.*)  FDA decided instead to create a separate subsection in the Instructions for Use section of the physician labeling titled "How to Remove ParaGard," in which it placed a modified version of the text FEI proposed for the "Removal and Embedment" subsection. (*Id.*)  FDA's "How to Remove ParaGard" subsection and text were included in the physician labeling FDA approved on September 1, 2005.  (*Id.*)

Plaintiff bears the burden of proving there was "newly acquired information" justifying a different warning and one that could be submitted to FDA and implemented as a CBE.  *Celexa*, 779 F.3d at 42.  Plaintiff must come forward with evidence; allegations of a mere "possibility" of changing a drug's label is not enough to avoid summary judgment.  *Fitzpatrick v. Louisville Ladder Corp.,* 2001 WL 1568389 at *4.  Plaintiff has no evidence that the 24 reports plaintiff alleged in her SAC to be "newly acquired information" reveal a risk of a different type than previously included in submissions to FDA.  The event described in those reports is breakage of an embedded arm of a ParaGard upon removal.  (Memorandum and Order, Doc. 66, p. 2.)  As demonstrated above, the risk of that event was known to FDA and included in the FDA-approved labeling in effect when plaintiff's ParaGard was placed.  Indeed, the only evidence before the Court is, and will be, that the risks were not "newly acquired information" between September 1, 2005 and January 11, 2010.

Similarly, plaintiff has no evidence that the risks described in the 24 reports were of "greater severity" or occurred with "greater frequency" than the risks of which FDA was aware. Plaintiff did not identify any expert witness to provide evidence of any "greater severity" or "greater frequency" of any kind, let alone evidence that would meet the applicable regulatory requirements for inclusion in the ParaGard label and use of a CBE.[4]  Those matters are beyond a lay person's understanding and require expert testimony.  *See Uribe v. Sofamor, S.N.C.,* No. 8:95-CV-00464, 1999 WL 1129703, *13 (D. Nebraska 1999); *see also, In re Mirena IUD Prods. Liab. Litig.* 169 F. Supp. 3d 396, 467-68 (S.D.N.Y. 2016), *aff'd,* 713 Fed. Appx. 11 (2d. Cir 2017) (recognizing the need for expert testimony and the fact that the complicated regulatory framework of the FDA and the process by which FDA approves pharmaceutical product's label is beyond the knowledge of a lay person).

The Solicitor General's explanation about "newly acquired information" is directly on point.  FDA had already reviewed adverse event information regarding difficult removals, embedment, and breakage, and FDA had already approved appropriate labeling to address those risks.  The 24 reports plaintiff identified are, at best, additional but similar information about the same risk.  As confirmed by the Solicitor General – such information does not meet the definition of "newly acquired information."

Without "newly acquired information" that scientifically supports a change, the ParaGard label could be changed only with "[FDA's] special permission and assistance," *i.e.*, through submission of a PAS.  As a result, plaintiff's claim is preempted and Teva is entitled to judgment as a matter of law.

---

[4] For example, reporting of frequency information in prescription drug labeling must be based on "adequate clinical studies."  *See* 21 C.F.R. § 201.80(e) and (g)(2).

## C.   PLAINTIFF HAS NO EVIDENDCE THAT THE WARNINGS IN THE PARAGARD WERE INADEQUATE

### 1.   The Warnings in the ParaGard Label Were Adequate as a Matter of Law

Plaintiff's failure-to-warn claim also fails because the ParaGard labeling was adequate as a matter of law.  As this Court has noted, "while in many instances the adequacy of warnings concerning drugs is a question of fact, it can become a question of law where the warning is accurate, clear, and unambiguous."  *Vallejo v. Amgen, Inc*., 8:14-CV-00050, 2014 WL 4922901, *3 (D. Nebraska 2014) (*citing Felix v. Hoffmann–LaRoche, Inc.,* 540 So.2d 102, 105 (Fla. 1989)).[5]  To find a warning adequate as a matter of law, the label must accurately and unambiguously convey the scope and nature of the risk, with sufficient specificity given the particular risk at issue.  *Id.* (*citing Rowland v. Novartis Pharm. Corp*., 2:12–CV–01474, 2014 WL 3735622, *12 (W.D. Pa. 2014); *In re Avandia Mktg., Sales Practices & Products Liab. Litig*., 817 F.Supp. 2d 535, 546 (E.D. Pa. 2011); and *Felix v. Hoffmann–LaRoche, Inc*., 540 So.2d at 105).

In a recent case involving alleged injuries very similar to those plaintiff alleges here and the same label and warnings involved in this case, the United States District Court for the Southern District of California held, as a matter of law, that "the ParaGard label was adequate." *Estrada v. Teva,* Case No. 14-CV-1875-AJB-AGS, p. 28 (S.D. Cal. 2017).[6]  In *Estrada,* the plaintiff alleged (like Ms. Ideus alleges here) that she suffered personal injuries and underwent surgery after her ParaGard was removed with "one arm of the IUD remaining embedded in the myometrium of her uterus."  *Id.,* p. 4.  Similar to plaintiff's allegations in this case, the plaintiff

---

[5] In *Vallejo*, the Court noted that the Nebraska Supreme Court has not addressed the adequacy of specific warnings in the context of pharmaceutical products, and, therefore, the Court looked to the law of other jurisdictions to guide its decision.

[6] The *Estrada* opinion is not publicly available.  Therefore, pursuant to Local Rule 7.5, Teva is filing the opinion as a provisionally sealed document, along with a Motion to Seal.

in *Estrada* alleged that the ParaGard package insert was inadequate because it "did not adequately warn of the risk of embedment and breakage." *Id.,* p. 28. The court disagreed, holding:

> After a careful review of the applicable law and both parties' moving papers, the Court concludes that there is no genuine dispute of material fact that the ParaGard label was adequate. To satisfy their burden as the moving party on summary judgment, Defendants assert that the adverse events Mrs. Estrada suffered are warned about in multiple sections of the label. The Court agrees.

*Id.*

The same is true here. Those exact same warnings about embedment and breakage, and the possible need for surgical removal, bar plaintiff's failure-to-warn claim. The ParaGard label expressly and specifically warned of the risks of embedment and breakage – the very events Ms. Ideus experienced. (ParaGard package insert, Mehs Dec., Exhibit A, p. 7.) It also expressly warned that surgical removal may be necessary if there is embedment. (*Id.*) Those warnings appear in multiple sections of the labeling – under Warnings, as a reported serious adverse event associated with use of IUDs, under the Continuing Care section, in the "How to Remove ParaGard" section, and in the Information for Patients. (*Id.*, pp. 7, 9, 13-14, and 19.) As in *Estrada,* Teva is entitled to summary judgment because the ParaGard label is adequate as a matter of law.

### 2.      Plaintiff Has No Admissible Evidence That the Warnings Were Inadequate

Plaintiff's claim likewise fails because she has no admissible evidence that the warnings in the ParaGard label were inadequate. Expert testimony is required when there are complex issues outside the common knowledge and lay experience. Under Nebraska law, expert evidence is necessary to establish the elements of product defect and causation in a products liability case. *Sullivan v. Zimmer, Inc.*, No. 806CV319, 2007 WL 1342559, *2 (D. Nebraska 2007) (*citing Laird v. Scribner Coop.,* 466 N.W.2d 798, 804 (Neb. 1991)). "In the prescription drug arena,

expert medical testimony is generally required to determine whether the drug manufacturer's warning to the medical community is adequate because prescription drugs are likely to be complex medicines, esoteric in formula and varied in effect." *Vallejo v. Amgen, Inc*., 2014 WL 4922901 at *3 (*citing Rowland v. Novartis,* 2014 WL 3735622 at *12). *See also, Uribe v. Sofamor, S.N.C.,* 1999 WL 1129703 at *7 ("Ordinarily, in medical cases, product defect and medical causation must be established by expert testimony."); *Scelta v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 404 Fed. Appx. 92, 94 (8th Cir. 2010) (no genuine issue of fact on strict liability or negligent failure-to-warn claims where plaintiff did not produce expert testimony that the warning label was inadequate); *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998) (granting summary judgment where plaintiff did not timely disclose expert to support product liability claims).

It is plaintiff's burden to put forth evidence that ParaGard's label is inadequate, and she cannot satisfy that burden with speculation or conjecture. *Fitzpatrick v. Louisville Ladder Corp.,* 2001 WL 1568389 at *4. Teva is not required to "negate" plaintiff's claims. *Celotex Corp. v. Catrett*, 477 U.S. at 324-25. Nevertheless, Teva has identified experts Daniel Davis, M.D., MPH and Sonja R. Kinney, M.D., to offer expert testimony regarding the label in effect at the time Ms. Ideus's ParaGard was placed. (*See generally,* concurrently filed Declaration of Daniel Davis, M.D., MPH ("Davis Dec.") and Declaration of Sonja R. Kinney, M.D. ("Kinney Dec.").)

For instance, Dr. Davis opines, "I do not agree that the product warnings for ParaGard were 'vague, incomplete or otherwise wholly inadequate' as claimed in the Complaint. In my opinion, the risks of embedment, breakage (including breakage upon removal), difficult removals and surgery were properly and adequately described in the ParaGard labeling in effect in January 2010, when Ms. Ideus had her ParaGard placed. That labeling was reasonable, appropriate and

adequate."   (Davis Dec., ¶8.) Likewise, Dr. Kinney opines, "It also is my opinion that the instructions and warnings in that ParaGard labeling adequately warned about the possible risks of embedment, breakage of the ParaGard, and surgical removal, including an embedded arm breaking on removal of the ParaGard." (Kinney Dec., ¶ 12.)

Plaintiff has no expert testimony to rebut the opinions of Drs. Davis and Kinney. Without admissible expert testimony, plaintiff is left with nothing but her own speculation and unsupported contentions about the adequacy of the ParaGard package insert.   Simply put, to prevail on her failure-to-warn claim, plaintiff must provide expert testimony regarding the allegedly inadequate ParaGard label.  She has not done so.  Therefore, her claim must fail.

### D.   Teva Has No Duty to Warn of Risks Already Known in the Prescribing Community

Under Nebraska law, there is no duty to warn of a known danger.  *Waegli v. Caterpillar Tractor* Co., 251 N.W.2d 370, 372–73 (Neb. 1977); *Anstine v. Briggs*, 191 215 N.W.2d 878 (Neb. 1974).  *See also, Crook v. Farmland Indus., Inc*., 54 F. Supp. 2d 947, 958–59 (D. Neb. 1999), *aff'd sub nom. Crook v. Kaneb Pipe Line Operating P'ship, L.P*., 231 F.3d 1098 (8th Cir. 2000) ("… one who suffers an injury while using a product that he knows may cause personal injury cannot complain that the seller failed to warn him of that which he already knew. Simply put, the law does not require a demonstrably unnecessary gesture.).  The duty to warn does not arise, 'if the user knows or should know of the potential danger, especially when the user is a professional who should be aware of the characteristics of the product."  *Uribe v. Sofamor, S.N.C.,* 1999 WL 1129703 at *13 (*citing Peitzmeier v. Hennessy Industries, Inc.,* 97 F.3d 293, 299 (8th Cir. 1996), *cert. denied,* 117 S.Ct. 1552 (1997) and *Haag v. Bongers,* 589 N.W.2d 318, 329 (Neb.1999)).

Other jurisdictions agree.  For instance:

> [I]n cases involving prescription drugs or medical devices, Georgia law provides that a manufacturer does not have a duty to warn end users of its product. *See McCombs v. Synthes (U.S.A.),* 277 Ga.252, 587 S.E.2d 594, 595 (Ga.2003). Instead, the manufacturer has a duty to warn only the patient's doctor, who acts as a learned intermediary between the patient and the manufacturer. *Id*. Further, "**there is no duty to give warning to the members of a profession against generally known risks.** There need be no warning to one in a particular trade or profession against a danger generally known to that trade or profession." *Niles v. Bd. of Regents of Univ. Sys. of Georgia*, 222 Ga.App. 59, 473 S.E.2d 173, 175 (Ga.Ct.App.1996).

*Cisson v. C.R. Bard, Inc.,* No. 2:11-CV-00195, 2013 WL 5700513, at *6 (S.D. West Virginia), a*ff'd sub nom. In re C.R. Bard, Inc., MDL. No. 2187, Pelvic Repair Sys. Products Liab. Litig.,* 810 F.3d 913 (4th Cir. 2016)(emphasis added).

The possible risks of ParaGard have been well-known for years among physicians and other health care providers who prescribe and place ParaGard IUDs.  (Kinney Dec., ¶ 8; Expert Report, Davis Dec., Ex. B, p. 6.)  Those risks include embedment, breakage and the possible need for surgical removal.  (*Id.*)  Indeed, the risk of embedment, breakage, and the need for surgical removal were well-known in the physician, APP, and physician assistant communities in the Nebraska area in December 2009 and January 2010.  (Kinney Dec., ¶ 9.)  Dr. Kinney learned of those risks during her residency.  (*Id.*)

The evidence is, and will be unrebutted, that the risks of embedment, breakage and surgical removal were generally known among relevant members of the medical profession at the time plaintiff's ParaGard was placed.  Accordingly, there was no duty for Teva to warn of those risks or include additional warning language about those risks in the ParaGard label.  Teva is entitled to summary judgment for that additional reason.

### E.    PLAINTIFF CANNOT SATISFY HER BURDEN OF PROVING PROXIMATE CAUSE

As the Court noted in its Order on Teva's Motion for Judgment on the Pleadings (Memorandum and Order, Doc. 56, at fn 2), Nebraska adopted the "learned intermediary

doctrine" in *Freeman v. Hoffman-La Roche, Inc.* 618 N.W. 2d 827 at 841 (Nebraska 2000).   As explained in *Freeman,* "in cases involving prescription drugs, it is widely held that the duty to warn extends only to members of the medical profession and not the consumer."   *Id.,* 841.   To prevail on a failure-to-warn claim where the learned intermediary doctrine applies, the plaintiff must prove not only that no warning was provided or that the warning provided was inadequate, but also must prove that the inadequacy caused the injury.   If the plaintiff does not produce evidence that the prescribing health care provider would have acted differently; *i.e.,* not prescribed and placed the ParaGard IUD, if plaintiff's additional warning language was included in the ParaGard label, plaintiff has not satisfied her burden of proof and Teva is entitled to judgment as a matter of law.   *See Uribe v. Sofamor, S.N.C.,* 1999 WL 1129703 at *14 (no proximate cause where plaintiff did not demonstrate "any warning which would have altered [physician's] course of treatment"); *see also, Brinkley v. Pfizer, Inc.,* 772 F.3d 1133, 1138 (8th Cir. 2014) (holding that in order to recover for failure to warn in a prescription drug case, a plaintiff must show that but for the inadequate warning, the prescribing physician would not have prescribed the product).

Here, plaintiff has no such evidence.   Indeed, in both her interrogatory answers and deposition testimony, plaintiff has failed to even identify the healthcare practitioner who placed her ParaGard.   (Answer to Interrogatory No. 2, attached to Erny Dec. as Exhibit A; Deposition of Stephanie Ideus, excerpts attached to Erny Dec. as Exhibit B, at p. 65, lines 12-14.) Accordingly, she cannot satisfy her burden of proof because there is no evidence from the prescriber that he or she would not have prescribed and placed plaintiff's ParaGard if additional warning language about embedment and breakage had been included in the ParaGard label.   The Court should enter summary judgment in Teva's favor.

25

## IV.    CONCLUSION

For the foregoing reasons, individually and collectively, defendants Teva Pharmaceuticals USA, Inc. and Teva Women's Health, Inc., respectfully request that this Court grant summary judgment in their favor.

Respectfully submitted,

/s/ *Frederick M.Erny*
Jeffrey F. Peck, admitted *pro hac vice*
Frederick M. Erny, admitted *pro hac vice*
Mary Lynn Tate, admitted *pro hac vice*
ULMER & BERNE LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Tel:  (513) 698-5060
Fax:  (513) 698-5061
jpeck@ulmer.com
ferny@ulmer.com
mtate@ulmer.com

Patrick Turner
STINSON LEONARD STREET LLP
1299 Farnam Street, Suite 1500
Omaha, NE 68102-1818
Tel: (402) 930-1740
Fax: (402) 829-8733
patrick.turner@stinson.com

***Attorneys for Defendants Teva Pharmaceuticals USA, Inc. and Teva Women's Health, Inc.***

26

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 13, 2018, a copy of the foregoing document was filed electronically.   Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.   Parties may access this filing through the Court's system.

/s/ *Frederick M. Erny*